```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
OLIVIA N. SERDAREVIC, M.D.,            :
                                       :        06 Civ. 7107 (DLC)
                    Plaintiff,         :
                                       :        OPINION AND ORDER
        -v-                            :
                                       :
ADVANCED MEDICAL OPTICS, INC., FRANCIS :
A. L'ESPERANCE, JR., M.D., STEPHEN L.  :
TROKEL, M.D., and VISX, INC.,          :
                                       :
                    Defendants.        :
------------------------------------- X
```

Appearances:

For the Plaintiff:
Ira S. Sacks
Daniel F. Coughlin
Rochelle A. Dede
Melanie J. Sacks
Dreier LLP
499 Park Avenue
New York, New York 10022

For the Defendants:
Ron E. Shulman
Roger J. Chin
Gregory J. Wallace
Wilson Sonsini Goodrich & Rosati
Professional Corporation
650 Page Mill Road
Palo Alto, California 94304

Meredith E. Kotler
Wilson Sonsini Goodrich & Rosati
Professional Corporation
1301 Avenue of the Americas
40th Floor
New York, New York 10019

DENISE COTE, District Judge:

This patent case concerns a dispute over the inventorship of technology used in laser vision correction.  The plaintiff, Olivia N. Serdarevic, M.D. ("Serdarevic"), describes herself as a world renowned ophthalmic surgeon and works from her office in New York.  She did her residency in the early 1980s at the Edward S. Harkness Eye Institute ("Harkness") at Columbia Presbyterian Medical Center.  Serdarevic alleges that during this period she was an inventor of certain technology that defendants Francis A. L'Esperance, Jr., M.D. ("L'Esperance") and Stephen L. Trokel, M.D. ("Trokel"), both of whom were prominent ophthalmologists and attending physicians at Harkness, have patented without acknowledging her as the inventor or co-inventor of the technology.  The six patents-at-issue each arise from applications filed in 1983, and were issued between 1987 and 1998.  The patents have been assigned to defendant VISX, Inc. ("VISX"), a wholly owned subsidiary of defendant Advanced Medical Optics, Inc. ("AMO") (collectively, "corporate defendants").[1]

Serdarevic filed this action on September 15, 2006.  In her Second Amended Complaint, Serdarevic seeks correction of

---

[1] VISX has been identified as the owner of the patents-in-suit in filings with the PTO since 1991, but was not sued in this action until March 2007, when the plaintiff added VISX as a defendant in her Second Amended Complaint.

inventorship, claiming that she is the sole inventor of the subject matter claimed in one of the patents and a joint inventor on the remaining five patents.  The Second Amended Complaint also asserts claims for unjust enrichment and fraud against Trokel.[2]  The defendants have moved for summary judgment, or in the alternative, dismissal of Serdarevic's complaint. They argue primarily that Serdarevic's inventorship claims are barred by the doctrines of laches and equitable estoppel and that her claims for unjust enrichment and fraud are barred by the statute of limitations.  Serdarevic has filed a cross-motion for discovery pursuant to Rule 56(f) of the Federal Rules of Civil Procedure.

The defendants' motions are treated as summary judgment motions rather than motions to dismiss because the defendants' arguments require the Court to consider facts outside the pleadings and because the plaintiff has had an opportunity to submit evidence opposing summary judgment.  As described below, the plaintiff has not shown that she is entitled to discovery and the summary judgment motions are granted.

---

[2] In her submissions in connection with the pending motions, Serdarevic withdrew a fraud claim against L'Esperance and her claims for breach of fiduciary duty.

BACKGROUND

Where facts are genuinely in dispute, the evidence is taken in the light most favorable to the plaintiff.  For the purposes of this motion, it is assumed that Serdarevic was in fact an inventor of technology described in each of the patents-in-suit.

The inventions at issue here were discovered between 1981 and 1985.  Serdarevic includes the following patents in this suit:

- 4,665,913 ("'913 Patent"), issued on April 28, 1992
- 5,188,631 ("'631 Patent"), issued on January 27, 1998
- 5,207,668 ("'668 Patent"), issued on April 7, 1998
- 5,108,388 ("'388 Patent"), issued on May 19, 1987
- 5,711,762 ("'762 Patent"), issued on February 23, 1993
- 5,735,843 ("'843 Patent"), issued on May 4, 1993

The first three patents name L'Esperance as their sole inventor, while the latter three name Trokel.  As Serdarevic admits, all of the patents have been assigned to VISX.

Serdarevic's Efforts to Secure Inventorship Rights

Serdarevic asserts that she learned of the patents-in-suit in October 1998, nearly eight years before filing this lawsuit, when a representative of the Apollo Company ("Apollo") approached her to request a license on the theory that she was an omitted co-inventor on the patents.  See Ethicon, Inc. v. U.S. Surgical Corp., 135 F.3d 1456, 1466 (Fed. Cir. 1998) (holding that wrongfully omitted co-inventor could license patent to third party absent an agreement to the contrary among

4

co-inventors).  On the advice of her attorney, she ended
discussions with Apollo in order to retain patent counsel and
investigate other options.

In January 1999, Serdarevic retained two patent attorneys
at the law firm Patton Boggs ("Patton Boggs").  In March 1999,
Patton Boggs wrote to VISX and Summit Technology, Inc.
("Summit"), VISX's major competitor, asserting that Serdarevic
had inventorship rights in the '913 and '338 Patents and several
other patents that the defendants concede were "genealogically
related" to the patents-in-suit.  Patton Boggs requested
negotiation to add Serdarevic's name to the patents, an
accounting for her share of past royalties, and an agreement to
permit Serdarevic to share in future income from the patents.
VISX's counsel responded in April, requesting documentation of
Serdarevic's claim of inventorship.  In June 1999, Patton Boggs
responded with a four-page letter that asserted that all of the
present patents-in-suit were the product of Serdarevic's
investigative work and argued that if Serdarevic were added as
an inventor or co-inventor on the '388 and '762 Patents, among
others, she would be able to support VISX's efforts to respond
to a reexamination of the '388 Patent[3] and to assist VISX in

---

[3] The '388 Patent was the subject of a reexamination initiated on
January 9, 1998.  The Patent Office issued a Reexamination
Certificate on September 19, 2000.

prosecuting its lawsuit against one competitor.  The letter advised VISX that Serdarevic might choose to assist its competitors if VISX did not resolve her claim in a mutually beneficial manner.

While the letter referred to "compelling" documentary evidence of the inventorship and corroborative testimonial evidence, it did not attach the documents or identify the witnesses.  Patton Boggs met with VISX'S counsel in September 1999.[4]  On November 5, VISX's counsel reminded Patton Boggs that it had agreed in the September meeting to provide documentation of Serdarevic's claims "promptly."  It inquired, "When may we expect to receive the promised material?"  As reflected in another letter from VISX's counsel, in a conversation on December 10, Patton Boggs promised to send the documentation or to advise VISX "that there are no such documents."  Patton Boggs counsel responded on December 13 with a note that read, "I will be unable to get back to you until after the first of the year due to everyone's crowded holiday schedule."

Despite these threats and promises in 1999, neither Patton Boggs nor Serdarevic contacted VISX again until after the

---

[4] Serdarevic refers to the September 1999 meeting in the declaration she submitted in opposition to the motion for summary judgment as an "in-person meeting concerning my inventorship claims."  Given her admission, and the reference to the meeting in a November 1999 letter, the assertion by plaintiff's counsel that Serdarevic needs discovery before she can concede that the meeting occurred is rejected.

complaint in this action was filed in 2006.  During these intervening years, Patton Boggs never provided any documentation to VISX to substantiate Serdarevic's claims.

In 2000, Serdarevic terminated her representation by Patton Boggs, with the understanding that the firm had a client conflict.  In late 1999 through 2001, Serdarevic raised <u>Ethicon</u> licensing arrangements with six companies, but none of them agreed to work with her to challenge the VISX patents.[5]  Two of these six companies were Allergan, a predecessor to AMO, and AMO itself.[6]  In 2001, Venable LLP began representing Serdarevic, and Serdarevic asserts that she first learned at that time that the Reexamination Certificate for the '388 Patent had issued in 2000.  Venable discovered a conflict in representing Serdarevic in October 2001, and their relationship terminated.

Between late 2002 and late 2004, Serdarevic requested several attorneys to represent her, most of them apparently on a contingency basis, but with the following exception, none agreed to do so.  In October 2004, two of these attorneys offered to represent her.  She rejected their offers because she disagreed with their proposed litigation strategy.  At some point after

---

[5] In 2004, Serdarevic recontacted one of these six companies without success.

[6] The discussions with Allergan and AMO each consisted of a single, brief conversation in June 2004 and October 2002, respectively.

March 2005 she retained her present counsel, who filed a patent application on her behalf in June 2006, and filed this action on September 15.

### Investments in VISX

VISX provides evidence that it was formed in 1986, and recorded losses for the first nine years of its existence. During these years, it invested in researching and developing Trokel's and L'Esperance's inventions. In late 1995, in the course of obtaining FDA approvals to use an excimer laser system in humans, VISX publicly disclosed that any adverse determinations with respect to patent rights could have a material adverse effect on its business. From 1995 to the end of 1998, VISX continued to develop its technology and conduct clinical trials of the excimer laser systems, culminating in an annual research and development expenditure of over $10 million. From 1999 to 2004, the FDA approved seven additional surgical procedures on the VISX laser system, including the LASIK procedure. VISX's research and development costs continued to grow, and as of today, LASIK is the predominant form of vision correction surgery. From 1996 through 2005, VISX reported ongoing patent litigation in its Forms 10-K.

In 2005, AMO acquired VISX. Of the $1.38 billion purchase price, $397 million was allocated to intangible assets such as technology rights and intellectual property. VISX warranted to

AMO that it had the full right to use its patents and that there was no pending or threatened "material suit" challenging the ownership of any of VISX's intellectual property, or claiming that the company's activities infringed another's intellectual property rights.

### VISX's Activities to Enforce the Patents-in-Suit

In the late 1990s through the early 2000s, VISX brought ten actions to enforce the '388 Patent, two actions to enforce the '762 Patent, five actions to enforce the '843 Patent, and five actions to enforce the '913 Patent. VISX also spent four years defending against an inventorship claim asserted in Texas by a doctor. VISX received a judgment in 2000 acknowledging Trokel as the sole inventor of the '388 Patent and VISX as its sole owner. In early 2000, VISX paid approximately $12 million in one-time payments, costs, and fees to settle several lawsuits, including the Texas action.

### Death of Potential Witnesses

The Second Amended Complaint quotes, as evidence that experts have credited Serdarevic as the inventor of techniques covered by the patents-at-issue, a recommendation letter written by Professor Marcel Massin ("Massin") describing her demonstrations in his Paris laboratory in 1980. Serdarevic's declaration in opposition to this motion makes extensive reference to Massin, explaining that her work with him in 1980

was the beginning of a "long-term continuing interaction."
Serdarevic describes conversations they had about her research
in not just 1980, but also 1981 and 1982.  Massin died in 2004.
Serdarevic's declaration also mentions that she had "extensive
discussions" in April 1980 with David Maurice, Ph.D., a
researcher on corneal structure and wound healing who died in
2002.  In addition, the declaration discusses Serdarevic's 1980
consultation with physical chemist Professor R. Bersohn, who was
working with ultraviolet lasers at the time, and who died in
2003.

DISCUSSION

　　Correction of Inventorship Claims

　　The corporate defendants argue that the plaintiff's patent
claims are barred by laches and equitable estoppel.  It is only
necessary to reach the first of these defenses.  See Wanlass v.
Gen. Elec. Co., 148 F.3d 1334, 1337 n.** (Fed. Cir. 1998)
(declining to reach equitable estoppel, given affirmance on the
ground of laches).

　　Laches may bar a patent action brought in equity and any
action involving the validity or infringement of a patent.  A.C.
Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1028-29
(Fed. Cir. 1992); see also 35 U.S.C. § 282.  The doctrine of
laches

> assures that old grievances will some day be laid to
> rest, that litigation will be decided on the basis of
> evidence that remains reasonably accessible and that
> those against whom claims are presented will not be
> unduly prejudiced by delay in asserting them.
> Inevitably it means that some potentially meritorious
> demands will not be entertained.  But there is justice
> too in an end to conflict and in the quiet of peace.

Aukerman, 960 F.2d at 1029 (citation omitted).  As described by

the Supreme Court, a federal court may dismiss a suit where the

plaintiffs' "lack of diligence is wholly unexcused; and both the

nature of the claim and the situation of the parties was such as

to call for diligence."  Benedict v. City of New York, 250 U.S.

321, 328 (1919) (citation omitted).

The Federal Circuit has described the elements of the

laches defense as follows:  "The laches defense has two

underlying elements:  first, the [plaintiff's] delay in bringing

suit must be "unreasonable and inexcusable," and second, the

[defendant] must have suffered "material prejudice attributable

to the delay."  Intirtool, Ltd. v. Texar Corp., 369 F.3d 1289,

1297 (Fed. Cir. 2004).  Material prejudice may be evidentiary or

economic.  Aukerman, 960 F.2d at 1033.  Evidentiary prejudice

may arise where a defendant's ability to present a defense is

impaired "due to the loss of records, the death of a witness, or

the unreliability of memories of long past events, thereby

undermining the court's ability to judge the facts."  Id.

Economic prejudice may be a more "slippery" concept.  Id.  It

may arise where a defendant will "suffer the loss of monetary investments or incur damages which likely would have been prevented by earlier suit." Id. This concept addresses something more than the damages that may be awarded for a finding of infringement; it is seeking evidence that there has been a "change in the economic position of the alleged infringer during the period of delay." Id.

In addition to assessing the existence of unreasonable delay and material prejudice, a court must also weigh the plaintiff's proffered reasons for the delay. Id. Reasons which have been recognized in some cases as justifying delay include the existence of other litigation, negotiations with the defendant, poverty and illness, war, limited infringement, and a dispute over ownership of the patent. Id. Since laches is an equitable defense, the court must weigh all relevant facts and equities in making a decision on the defense, including "the length of delay, the seriousness of prejudice, the reasonableness of excuses, and the defendant's conduct or culpability." Id. at 1034; see also id. at 1036; Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc., 988 F.2d 1157, 1163-64 (Fed. Cir. 1993) (considering tactical manipulation of the legal process).

Under defined circumstances, a presumption of laches

attaches.  "A presumption of laches arises 'where a patentee delays bringing suit for more than six years after the date the patentee  knew or should have known of the alleged infringer's activity.'" Intirtool, 369 F.3d at 1297 (citing Aukerman, 960 F.2d at 1028.).  This presumption, which is rebuttable, applies to challenges to inventorship.  Advanced Cardiovascular, 988 F.2d at 1163.

The six year clock begins to run from the date on which the plaintiff had "actual or constructive knowledge of an act of infringement that gives rise to a legal claim." Intirtool, 369 F.3d at 1297-98.  Where a plaintiff does not have actual knowledge of an act of infringement, she is nonetheless charged with the knowledge she might have acquired through inquiry, "provided the facts already known by [her] were such as to put upon a [person] of ordinary intelligence the duty of inquiry." Advanced Cardiovascular, 988 F.2d at 1162 (citation omitted). Thus, parties must "acquaint themselves with their rights within a reasonable time."  Wanlass, 148 F.3d at 1338 (citation omitted).  Where activities are "pervasive, open, and notorious," there is a duty to investigate whether there is infringement.  Id.  This principle applies with particular force when the activity is "prevalent in the inventor's field of endeavor."  Id.

With the presumption, unreasonable delay and material prejudice are automatically inferred.  Aukerman, 960 F.2d at 1037.  Thus, where this presumption applies, the burden of producing evidence to put the existence of a presumed fact into genuine dispute shifts to the plaintiff.  Id.  The plaintiff bears the burden of producing evidence that,

> if believed, would show that either the [plaintiff's]
> delay was reasonable or excusable under the
> circumstances or that the defendant suffered neither
> economic nor evidentiary prejudice.  Whenever the
> presumption arises, including in the summary judgment
> context, the patentee's evidence must be sufficient to
> raise a genuine issue of material fact about either
> the excuse for or reasonableness of the delay, or the
> existence of the prejudice.

Wanlass, 148 F.3d at 1337.  If the plaintiff satisfies his or her burden of production, the presumption dissipates, and the defendant has the burden of establishing the defense.  Aukerman, 960 F.2d at 1037-38.  When seeking summary judgment on the ground of laches, of course, a defendant must also show that there is no genuine issue of material fact about the delay or prejudice that would require a trial.  See Wanlass, 148 F.3d at 1337.  Laches, like other equitable defenses, is unavailable to a defendant who has "unclean hands" because of misconduct toward the plaintiff.  Aukerman, 960 F.2d at 1038.

The presumption applies in this case.  Serdarevic concedes that she was aware of the patents-in-suit since October 1998, nearly eight years before she filed this lawsuit.[7]

The plaintiff contends that the presumption should not apply with its ordinary force because the parties have not yet had discovery.  Serdarevic points to no authority recognizing such an exception to the presumption, and it would be inappropriate to create one.  The doctrine of laches is intended to grant litigation peace, and arises only after a significant passage of time.  In such circumstances, defendants should not have to bear the burden and expense of any discovery before they can invoke the presumption.  To the extent a plaintiff is able to make the showing required under Rule 56(f), of course,

---

[7] The plaintiff's papers are conspicuously silent about her professional career since her discovery of the invention.  But, her counsel's 1999 letter to VISX describes her as a world renowned ophthalmic surgeon.  In addition, her opposition to this motion refers to her attendance and presentations at international conferences discussing the techniques covered by the invention.  If this case were to proceed to discovery, it is likely that the defendants would be able to develop evidence that Serdarevic had actual or constructive notice long before 1998 of the work done by VISX to develop and commercialize the technology covered by the patents-in-issue.  Serdarevic does not actually dispute that this is so.  Instead, she seeks to start the clock from the date that she learned of the implications for her rights of inventorship based on the 1998 Federal Circuit decision in Ethicon, Inc. v. U.S. Surgical Corp., 135 F.3d 1456 (Fed. Cir. 1998), and the date she was sent copies of 26 VISX patents.  Given the fact that the presumption clearly applies here, it is unnecessary to resolve the extent to which Serdarevic might be able to push forward the date of notice beyond her actual or constructive knowledge of the defendants' acts to her improved knowledge of her legal rights.

summary judgment may not be entered, in reliance on the presumption or otherwise, without giving the plaintiff an opportunity to conduct the identified necessary discovery.  As described below, Serdarevic has not shown that she is entitled under Rule 56(f) to discovery before adjudication of this motion.  Therefore, the plaintiff bears the initial burden of producing evidence that could preclude a finding of laches.

With respect to the requirement of unreasonable and inexcusable delay, Serdarevic has not carried her burden of production.  Whether a delay is reasonable or excusable depends on the circumstances.  <u>Aukerman</u>, 960 F.2d at 1032.  Serdarevic's memorandum of law in opposition to the corporate defendants' motion does not make any attempt to explain why her delay was reasonable.  It simply notes that she spent the time following 1998 trying to secure and commercialize her inventorship rights.

Serdarevic's decision not to argue that her delay should be excused is understandable.  Based on the evidence she has presented, it appears that she spent much of the intervening eight years trying unsuccessfully to convince either VISX's rivals to underwrite her claims or law firms to pursue her claims on a contingency basis.[8]  She made only one half-hearted

---

[8] The only law firms that did any work for Serdarevic were those which she indicates she retained.  Although she lists other firms with whom she had contact, they each declined to pursue her case; she does not suggest that they declined to take her on

16

effort to confront VISX with her claims, and that was shortly
after being informed about the implications of the Ethicon
decision, and the leverage that it might give her against VISX.
For a price, she offered her "assistance" to VISX in 1999 in the
ongoing reexamination proceeding and to defend against other
assaults on the VISX patents.  She threatened to join forces
with VISX's competitors if VISX did not resolve the matter "in a
mutually beneficial manner."  But, when asked for documentary
and testimonial evidence of her inventorship, she produced none
and did not file this lawsuit until more than seven years later.
Thus, Serdarevic has failed to present any evidence or argument
that would serve to lift the presumption that her delay in
filing suit was inexcusable and unreasonable.

     With respect to the question of prejudice, Serdarevic has
similarly not met her burden of production.  The defendants
claim both evidentiary and economic prejudice.  Serdarevic has
little to say about the existence of evidentiary prejudice.  She
devotes most of her opposition to this motion to the contention
that she needs discovery to test the existence of economic
prejudice to the defendants.

---

as a paying client.  Serdarevic has offered no evidence of her
personal financial situation, and therefore, there is no basis
to infer that she was financially unable to retain counsel.
Indeed, she did retain Patton Boggs and her present counsel.  As
a consequence, there is no reason to explore the circumstances
under which a plaintiff's poverty might present an acceptable
reason for delay in filing suit.

Serdarevic has failed to show that there is a question of fact about the evidentiary prejudice to the defendants from her delay.  Serdarevic advised VISX in general terms of her claim in 1999.  If she had provided VISX with evidence of her claim in response to its request, and/or sued at that time, these issues would have been resolved or litigation begun in 2000.  At that time, three witnesses whom she contends had knowledge of her inventorship and who have since died were still alive.  They died between the years 2002 and 2004.  Serdarevic's own submissions show that these witnesses worked or consulted with her in connection with her research in 1980, during the time she alleges she was developing the inventions that are the subject of the patents-in-suit.  They were each important enough to the historical record for Serdarevic to describe her work with them in the declaration she submitted in opposition to this motion.  Regardless of whether Serdarevic would need to rely on statements from these witnesses to prove her inventorship claims, their deaths prevent the defendants from fully investigating Serdarevic's claims.  In addition to these deaths, we are another seven years away from the early 1980s, when Serdarevic contends that she invented the patented processes.  Given this passage of time, there is also the cumulative and inherent prejudice from the dimming memories of all participants, including Serdarevic herself.  Serdarevic has

therefore failed to produce sufficient evidence to dispute
VISX's and AMO's claims of evidentiary prejudice.  In light of
this ruling, it is unnecessary to consider whether Serdarevic
has met her burden with respect to the claims of economic
prejudice.

Finally, before laches may be invoked, the Court must
weigh the equities.  Here, the delay has been substantial
and is unexcused.  When Serdarevic failed to respond to
VISX's repeated requests in 1999 for corroboration of her
claim, the only reasonable interpretation of her silence
was that she had no evidence to support her assertion and
she had abandoned it.  Indeed, when she knew that the PTO
was reexamining these patents she did not act to bring her
claim of inventorship before that body and to require VISX
to confront her claim at that time and in that forum.  In
the interim, three witnesses whom the plaintiff herself
considered important enough to rely upon in opposing this
motion have died, and every survivor's memory has grown
dimmer.  For their part, the defendants have moved on and
deserve litigation peace.  The individual defendants
assigned their patent rights in 1985 and 1988, and VISX
succeeded in a lengthy reexamination proceeding in
defending the patents.  There is no countervailing
equitable consideration that, when balanced against these

facts, should afford Serdarevic the right to bring this
patent litigation in 2006.

The plaintiff argues that summary judgment is
inappropriate because she is entitled to take discovery
pursuant to Rule 56(f) of the Federal Rules of Civil
Procedure.  "[S]ummary judgment may be sought at any time
after a pleading is served."  Aetna Cas. and Sur. Co. v.
Aniero Concrete Co., Inc., 404 F.3d 566, 573 (2d Cir.
2005).  As the parties agree,

> [t]o request discovery under Rule 56(f), a party must
> file an affidavit describing: (1) what facts are
> sought and how they are to be obtained; (2) how these
> facts are reasonably expected to raise a genuine issue
> of material fact; (3) what efforts the affiant has
> made to obtain them; and (4) why the affiant's efforts
> were unsuccessful.

Gualandi v. Adams, 385 F.3d 236, 244 (2d Cir. 2004); see Aetna,
404 F.3d at 573; see also Exigent Technology, Inc. v. Atrana
Solutions, Inc., 442 F.3d 1301, 1310 (Fed. Cir. 2006) ("We apply
the law of the regional circuit and review the district court's
ruling on the Rule 56(f) motion for an abuse of discretion.")
(citation omitted).  A "bare assertion that the evidence
supporting a plaintiff's allegation is in the hands of the
defendant is insufficient" to obtain discovery on a Rule 56(f)
motion.  Aetna, 404 F.3d at 573.

Serdarevic has not identified any discovery that she
requires that is relevant to the bases on which laches has been

presumed and found in this case.  Serdarevic seeks discovery to
test two issues:  whether VISX and AMO would have made the same
investments in the patents-in-suit despite her delay in filing
suit, and whether the individual defendants received payments of
any kind within the past seven years.  Only the first of these
issues has any potential relevance to the defense of laches, and
that is solely in connection with the presumption that the
corporate defendants suffered economic prejudice.  Since it was
unnecessary to reach the issue of economic prejudice to find
that laches bars the patent claims, Serdarevic's Rule 56(f)
motion does not present an impediment to entry of summary
judgment on those claims and the motion is denied.

     Finally, Serdarevic's argument that the defendants' laches
defense is barred by the doctrine of unclean hands fails.  A
"patentee may be able to preclude application of the laches
defense with proof that the accused infringer was itself guilty
of misdeeds towards the patentee."  Aukerman, 960 F.2d at 1038.

     Serdarevic does not identify those acts of the defendants
that she contends support her allegation of unclean hands other
than the failure of the individual defendants to list her as an
inventor on their patents.  She has not identified any
wrongdoing by either VISX or AMO that could constitute
wrongdoing amounting to unclean hands and no act by any
defendant that could explain or excuse her delay in bringing

this lawsuit.  She has not alleged that any defendant misled her as to the existence of the patents.  Serdarevic concedes that she learned about the patents-in-suit in October 1998.  She has not argued that any defendant engaged in any act that prevented her from filing suit during the roughly eight years between October 1998 and the filing of this litigation.  In these circumstances, Serdarevic's naked reference to the defense of unclean hands fails to prevent the award of summary judgment to the defendants on the patent claims as barred by laches.

   Unjust Enrichment Claim Against Trokel and L'Esperance

   Serdarevic asserts a claim of unjust enrichment against the two individual defendants.  In New York, the statute of limitations for unjust enrichment claims is six years from the date "of the wrongful act giving rise to a duty of restitution." Golden Pac. Bancorp v. FDIC, 273 F.3d 509, 518, 520 (2d Cir. 2001) (citing N.Y. C.P.L.R. § 213(1) (McKinney 1990)), and Congregation Yetev Lev D'Satmar, Inc. v. 26 Adar N.B. Corp., 596 N.Y.S.2d 435, 437 (App. Div. 1993).

   The individual defendants have presented evidence to show that the unjust enrichment claims against them are time-barred. Trokel and L'Esperance have each affirmed under penalty of perjury that in the last seven years he has "not received any payment, stock, or other compensation in exchange for any rights" under the patents-in-issue in which he was named as the

inventor.  To support this declaration, they have presented copies of the documents that trace the assignments of their rights and the termination of their rights to receive payments based on the use of the patents.

The plaintiff's sole argument addressed to this statute of limitations defense is founded on speculation that discovery could reveal some benefit that L'Esperance or Trokel may have received from the patents-in-suit during the limitations period. She highlights the defendants' use of the phrase "in exchange for any rights" and suggests that there might have been some other benefit that they received as a result of or from the patents.  She invokes Rule 56(f) to request an opportunity to depose these two men to test the breadth and accuracy of their assertions.

Serdarevic's request for discovery is denied.  She has not grappled with the documentation that supports the declarations that neither man has received remuneration from the patent-in-suit within the limitations period.  She does not dispute the assignments of their rights.  In these circumstances, depositions are not warranted.  Serdarevic has not shown that there is any reason to believe that discovery might elicit relevant evidence.  Therefore, summary judgment is granted to L'Esperance and Trokel on the unjust enrichment claim.

Fraud Claim Against Trokel

Trokel contends that the "actual and constructive fraud" claim against him is barred by the statute of limitations.  The Second Amended Complaint vaguely alleges that Trokel knew that the plaintiff was the sole or joint inventor of the subject matter claimed in the '388, '762 and '843 Patents, and that he concealed from and misrepresented facts to her to prevent her from taking actions that would result in her being listed as their inventor.  Her most specific allegation relates to the early 1980s and is that Trokel had an opportunity or obligation to disclose the existence of his patent filings "when he was controlling Dr. Serdarevic's access to experimental apparatus essential to furtherance of the research that led to her conception and reduction to practice of the inventions of the Trokel Patent Family, as well as influencing Dr. Serdarevic's opportunities to publish the fruit of her research."  She asserts that, had she known what Trokel concealed from her, she would have taken action to have herself listed as the inventor of the patents.

As the parties agree, New York's statute of limitations for fraud claims is the longer of six years from the date on which the fraud occurred or two years from discovery or the time when the plaintiff should have, with reasonable diligence, discovered the fraud.  N.Y. C.P.L.R. § 213(8).  They also agree that the

limitations period for constructive fraud is six years from
occurrence, with no separate discovery rule.  County of Ulster
v. Highland Fire Dist., 815 N.Y.S.2d 303, 306 (App. Div. 2006).
The dates on which Trokel allegedly controlled Serdarevic's
research and publishing opportunities and actively concealed his
use of her work in his patent filings were in the early 1980s,
or far beyond the limitations period.  Serdarevic also concedes
she was aware of the Trokel patents by October 1998.  So, even
if Trokel had somehow succeeded through fraud in concealing the
existence of the patents from her until that date, nearly twenty
years after the inventions, both her actual and constructive
fraud claims would still be barred by the statute of
limitations.

     Serdarevic attempts to circumvent the statute of
limitations bar with two arguments.  First, she contends that
Trokel fraudulently concealed her inventorship from the Patent
Office during the reexamination proceedings for the '388 Patent,
right up until the Reexamination Certificate was issued on
September 19, 2000.  She filed suit on September 15, 2006, or
just shy of the six year limitation period.  There are several
flaws in this argument.  First, the fraud claim is premised on
defrauding Serdarevic by concealing information from her, not
from the Patent Office.  Second, she has conceded knowing about
the patents many months before the six year limitations period

ran.  As of 1998, Serdarevic knew of the patents and was in a position to take steps to correct the identification of the inventor for those patents.  Moreover, she knew of the reexamination proceedings no later than June 1999, when her counsel tried to convince VISX that Serdarevic could be useful to VISX in defending its patent in those proceedings.  As a result, the issuance of the Reexamination Certificate within the limitations period cannot save this claim.

Next, Serdarevic argues that the six year limitations period should be equitably tolled because of Trokel's fraudulent concealment "of the existence of the patent applications, patents and of the subsequent reexamination proceedings," which prevented her from exercising her rights.  For the very reasons just given, this argument must fail as well.  It is unnecessary to explore under what circumstances the limitations period may be tolled where it is undisputed that the plaintiff knew of the patents -- which she contends wrongly omit her as their inventor -- two years before the limitations period.

The Trokel fraud claim is therefore barred by the statute of limitations.  It is unnecessary, as a result, to analyze whether the fraud claim complies with the pleading standard articulated in Rule 9(b), Fed. R. Civ. P.

CONCLUSION

The defendants' March 23, 2007 summary judgment motions are granted.  The plaintiff's April 13 motion for discovery is denied.  The Clerk of Court shall enter judgment for the defendants and close the case.

SO ORDERED:

Dated:    New York, New York
          September 25, 2007

_____
          DENISE COTE
United States District Judge